## KENNEDY v. TITLE & TRUST CO. OF FLORIDA, et al.

Circuit Court, Dade County.

June 5, 1953.

Victor B. Hutto, Miami, for plaintiff.

Kurtz, Reed, Sappenfield & Cooper, Miami, for Title & Trust Co. of Florida.

Thomas L. Tatham, Miami, for C. R. Wilks, Inc.

George S. Okell, Sr., Miami, for Sot G. and Kathleen Pappas.

Walton, Hubbard, Schroeder, Lantaff & Atkins, for C. Clyde Atkins.

VINCENT C. GIBLIN, Circuit Judge.

Counsel for all the parties agree that there is no factual dispute militating against the entry of a declaratory decree by which the legal questions involved in the suit shall be determined.

The pertinent facts, as to which counsel are in accord, are herein stated.

By its deed, executed and acknowledged on September 13, 1950, C. R. Wilks, Inc. conveyed to Sot G. Pappas and Cathleen Pappas, his wife, the land involved in the suit. The deed evidences the reservation by the grantor, for itself and its successors and assigns, of "all petroleum and petroleum products and all other minerals of whatsoever nature or description in and under said land, together with a right of way not to exceed 100 ft. in width across, upon and through and over said land to test for, mine and prospect for and exploit the same." It was provided in the deed, however, that such right of way is "not to infringe upon or interfere with any buildings upon said land without payment of a reasonable amount for any damages caused thereby." The grantor specifically expressed in the deed its intention "to separately and severally dispose of the above described land, as distinguished from the minerals that may be underlying it, thus effectually dividing the property into two parts." The deed was delivered by the grantor to the grantees.

By their mortgage deed, executed and acknowledged on September 13, 1950 (the day on which the deed to them was executed and acknowledged), Sot G. Pappas and Cathleen Pappas, his wife, mortgaged the land to their grantor, C. R. Wilks, Inc., to secure the payment of an unpaid portion of the purchase price of the land. The mortgage deed was delivered to the mortgagee. It was filed for record in the office of the clerk of the circuit court on September 15, 1950 (two days after its execution and acknowledgment). There was no mention, however, in the mortgage deed, or any reference therein, to the reservations evidenced by the deed from the mortgagee to the mortgagors.

By their deed, executed and acknowledged on September 14, 1950 (the day following the conveyance to them), Sot G. Pappas and Cathleen Pappas, his wife, conveyed the land to L. D. Kennedy and Deborah R. Kennedy, his wife, subject (inter alia) to the lien of the purchase money mortgage and to reservations "of record."

By their mortgage deed, executed and acknowledged on September 14, 1950 (the day on which the deed to them was executed and acknowledged), L. D. Kennedy and Deborah R. Kennedy, his wife, mortgaged the land to their grantors, Sot G. Pappas and Cathleen Pappas, his wife, to secure the payment of an unpaid portion of the purchase price.

By their deed, executed and acknowledged on September 18, 1950 (four days after the deed to them was executed and acknowl-

edged and five days after the deed from C. R. Wilks, Inc. to their grantors had been executed and acknowledged), L. D. Kennedy and Deborah R. Kennedy, his wife, conveyed the land to the minor children in whose behalf this suit has been brought, Mary Margaret Kennedy, William Lawrence Kennedy and Deborah E. Kennedy, subject (inter alia) to reservations "of record."

The three mentioned deeds of conveyance and the last mentioned mortgage deed were simultaneously filed for record in the office of the clerk of the circuit court on September 25, 1950. Until the recording of the deed from C. R. Wilks, Inc. to Sot G. Pappas and Cathleen Pappas, his wife, there was no record evidence of the reservation by such grantor of "all petroleum and petroleum products and all other minerals of whatsoever nature or description in and under said land, together with a right of way not to exceed 100 ft. in width across, upon and through and over said land to test for, mine and prospect for and exploit the same."

It is contended in behalf of the minor grantees who now have title to the land that, because the conveyance to them was subject to reservations "of record" and because, at the time of such conveyance, there was no record of the mentioned reservations, such reservations do not affect the minor grantees or their title and that they have title to the land and to "all petroleum and petroleum products and all other minerals of whatsoever nature or description in and under said land."

The contention, in my opinion, is clearly untenable. Assuming (without deciding) that the minor grantees are not chargeable with actual notice, at the time of the conveyance to them, of the reservations in question, they were nevertheless chargeable with notice of all matters which appear on the face of any deed which forms an essential link in the chain of instruments through which their title is deraigned, whether such deed is recorded or not. The deed from C. R. Wilks, Inc. to Sot G. Pappas and Cathleen Pappas, his wife, by which the reservations are evidenced, is a necessary link in the chain of deeds under which the minor grantees claim. Without it, they would have no title. Claiming title under it, they are in no position to contend that they are not bound by its terms and provisions.

It is accordingly declared and decreed that the mentioned reservations are valid, effective and enforceable as to and against the minor grantees, Mary Margaret Kennedy, William Lawrence Kennedy and Deborah E. Kennedy, and that their title to the land involved in this suit (situated in Dade County, Florida, and described

24

as lots 1 to 12, both inclusive, and lots 21 to 24, both inclusive, in the northwest quarter of section 20 in township 52 south of range 40 east, lots 1 to 4, both inclusive, lots 9 to 12, both inclusive, in the southwest quarter of such section, and lots 1 to 4, both inclusive, and lots 9 to 16, both inclusive, in the southeast quarter of such section, according to the plat recorded in plat book 2, at page 68, of the public records of such county) is subject to such reservations.

On September 26, 1950, the Title & Trust Company of Florida issued to Mary Margaret Kennedy, William Lawrence Kennedy and Deborah E. Kennedy a title insurance policy by which it insured them and their executors, administrators, heirs and devisees against all loss or damage (not exceeding $16,900) which the insured shall sustain "by reason of defects in the title of" the minor grantees to the described land acquired by and under the mentioned deed to them from L. D. Kennedy and Deborah R. Kennedy, his wife.

On July 26, 1952, the minor owners of the land, by and through L. D. Kennedy, acting as their agent and attorney in fact, entered into a written agreement with C. Clyde Atkins, trustee, in and by which the latter agreed to purchase the land for the price and on the terms set forth in the agreement. It was provided in the agreement that the sellers were to furnish the buyer an abstract showing their title to be "good and marketable" as a condition precedent to the buyer's obligation to pay the agreed price. An abstract was furnished the buyer, but, basing his position on several stated reasons (including, but not limited to, the effect on the marketability of the title of the mentioned reservations), the buyer refused to consummate the purchase because of the unmarketability of the title.

The plaintiff seeks in this suit an answer to the question of whether or not the reservations affect and impair the marketability of the title. The other objections, the validity of which are not challenged, are ignored. In other words, the answer to an abstract question is sought.

It would accomplish no useful purpose to determine that the reservations do not affect or impair the marketability of the title when (as is conceded) it is unmarketable for other reasons.

Accordingly, the court refuses to answer, by a declaratory decree, the question presented; and the plaintiff's bill of complaint, as amended, as to and against the defendant C. Clyde Atkins, trustee, is dismissed at the plaintiff's cost.

As against the defendant title insurance company it is contended that the insurer was and is under "obligation to defend the

title" and to remedy any defects in the title and, if it should be unsuccessful, to compensate in damages the insured.

No need for the construction of any of the terms or provisions of the policy has been shown. They are clear and unambiguous. Among them is the provision that the insurer shall not be liable "in any event for any loss or damage arising from the refusal of any party to carry out any contract to purchase . . . the estate or interest insured."

Certainly, therefore, aside from all other considerations, it is evident that the obligation is not imposed on the defendant title insurance company to defend the insured title against the objections made to it by the prospective buyer who refused to consummate the contemplated purchase or to remedy the defects pointed out by him; and it is so declared and decreed. To hold otherwise would be to distort the terms and provisions of the policy and subject the insurer to liability in any similar situation in which a prospective purchaser, whether rightfully or wrongfully, should refuse to effectuate a purchase because of the asserted unmarketability of the title.

No question or dispute as between the plaintiff and the defendants Sot G. Pappas and Cathleen Pappas, his wife, is presented. As between such parties no declaration of rights or duties is sought; and no relief or remedy against such defendants is prayed.

Accordingly, the plaintiff's bill of complaint, as amended, as to and against the defendants Sot G. Pappas and Cathleen Pappas, his wife, is dismissed at the plaintiff's cost.

The plaintiff is required to pay all the costs of the suit.

By this decree the suit is terminated and jurisdiction is reserved only for the purpose of enforcing the provisions as to costs.